UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IMAN HAKIMI,<br><br>　　　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>THE BANK OF NEW YORK MELLON, et al.,<br><br>　　　　　　　　　Defendant(s). | Case No. 2:14-CV-2215 JCM (CWH)<br><br>ORDER |

Presently before the court is defendants Bank of America, N.A., CTC Real Estate Services, and Mortgage Electronic Registration Systems, Inc.'s motion to dismiss complaint. (Doc. # 5). National Default Servicing Corporation joined defendants' motion. (Doc. # 19). *Pro se* plaintiff Iman Hakimi filed a response (doc. # 17). Defendants did not file a reply.

**I.　　Background**

This case arises out of a mortgage loan that plaintiff obtained to finance the purchase of real property located at 537 Hagens Alley, Mesquite, Nevada 89027. To evidence the loan, plaintiff executed a promissory note for $155,500.00. A first deed of trust for the benefit of Countrywide Bank, N.A. ("Countrywide") secured the note. (Doc. # 5-1, exh. A). The deed of trust named Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary and CTC Real Estate Services ("CTC") as trustee. (*Id.*). The deed of trust was recorded with the Clark County recorder on October 1, 2004. (*Id.*).

On December 20, 2012, MERS assigned the deed of trust to Bank of America. (Doc. # 5-2, exh. B). Bank of America recorded a substitution of trustee on September 20, 2013, naming National Default Servicing Corporation ("National Default") as trustee under the deed of trust.

**James C. Mahan**
**U.S. District Judge**

1  (Doc. # 5-3, exh. C). Plaintiff defaulted on the loan. On September 30, 2013, National Default,
2  as substitute trustee, recorded a notice of default and election to sell the property. (Doc. # 1 at ¶
3  40; doc. # 5-4, exh. D). On February 8, 2015, Bank of America recorded an assignment
4  transferring the deed of trust to MCM Capital Partners, LLC ("MCM") as trustee for securitized
5  trust ventures trust 2013-I-H-R. (Doc. # 1 at ¶ 47; doc. # 5-5, exh. E).

6  National Default recorded a notice of trustee's sale against the property on April 11, 2014.
7  (Doc. # 1 at ¶ 51; doc. # 5-6, exh. F). National Default recorded a second notice of trustee's sale
8  against the property on September 30, 2014. (Doc. # 5-7, exh. G). On October 21, 2014, ventures
9  trust 2013-I-H-R purchased the property at foreclosure through its trustee, MCM. (Doc. # 5-8,
10 exh. H).

11 On October 14, 2014, plaintiff brought suit in the Eighth Judicial District Court for Clark
12 County, Nevada. (Doc. # 1-1). Defendants Bank of America and CTC removed the case to this
13 court on December 30, 2014. (Doc. # 1). Plaintiff's complaint asserts claims for (1) lack of
14 standing/wrongful foreclosure; (2) fraud in the concealment; (3) fraud in the inducement; (4)
15 slander of title; (5) quiet title; (6) declaratory relief; (7) violation of the Truth in Lending Act
16 ("TILA"); (8) violation of the Real Estate Settlement Procedures Act ("RESPA"); (9) contractual
17 rescission; (10) intentional infliction of emotional distress; and (11) fraud. (Doc. # 1-1). Plaintiff
18 also seeks compensatory, special, general, and punitive damages, as well as an order granting him
19 ownership of the property in fee simple. (*Id.*).

20 Defendants Bank of America, CTC, and MERS ("defendants") bring the instant motion to
21 dismiss under Federal Rule of Civil Procedure 12(b)(6) and ask the court to dismiss plaintiff's
22 complaint against them with prejudice. (Doc. # 5).

23 **II.     Legal Standards**
24      *A. Rule 8*
25 A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief
26 can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and
27 plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);
28 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed

**James C. Mahan**
**U.S. District Judge**

- 2 -

factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint. *Id.* at 1950. However, legal conclusions are not entitled to the assumption of truth. *Id.* at 1950. Mere recitals of the elements of a cause of action, supported by only conclusory statements, do not suffice. *Id.* at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id.* (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.... However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

James C. Mahan
U.S. District Judge

- 3 -

& Co., 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994). Under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 925 (9th Cir.2001).

### B.  Rule 9

Rule 9 provides that for a party to allege fraud, he "must state with particularity the circumstances constituting fraud.... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Assertions of fraud must include "the who, what, when, where, and how" of the misconduct alleged. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003). Rule 9 serves several purposes, including: (1) providing defendants with adequate notice so they are able to defend the charge and deter plaintiffs from filing complaints " 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir.2009) (quoting *In re Stac Elecs. Sec Litig.,* 89 F.3d 1399, 1405 (9th Cir.1996) (citation omitted)).

### III.  Discussion

As an initial matter, the court acknowledges plaintiff filed his response to defendants' motion to dismiss *pro se.* Plaintiff's response to defendants' motion to dismiss is, therefore, held to less stringent standards. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to

**James C. Mahan**
**U.S. District Judge**

- 4 -

less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted). However, "*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). Because plaintiff's 46-page complaint was prepared and filed by an attorney, it will not be held to less stringent standards.

Plaintiff's complaint is a version of a form complaint available on the internet.[1] The complaint appears to make little attempt to connect plaintiff's causes of action to the factual allegations in this particular case. Plaintiff refers generally to "Defendant" and "Defendants" without any attempt to identify which defendant took which particular action. Further, many of plaintiff's allegations are legal conclusions that the court need not accept as true. *Iqbal*, 556 U.S. at 1949-50.

The complaint also relies heavily on a "forensic audit" attached as an exhibit to the complaint.[2] Plaintiff's complaint consists largely of generic and vague allegations, as well as legal conclusions, which do not concern or implicate the defendants in this matter or the conduct giving rise to the present action.

Defendants assert that plaintiff's first, second, third, fourth, fifth, sixth, tenth, and eleventh claims depend erroneous legal theories and fail as a matter of law. (Doc. # 5 at 5). Defendants assert that plaintiff erroneously concludes that the loan is void and defendants therefore lack standing to foreclose on the property based on legal theories that Nevada courts have repeatedly rejected.

---

[1] *See* Sample Complaint, *available at* http://www.certifiedforensicloanauditors.com/pdfs/SAMPLECOMPLAINT.pdf.

[2] The Federal Trade Commission describes so-called "forensic loan audits" as a technique used by "[f]raudulent foreclosure 'rescue' professionals [who] use half-truths and outright lies to sell services that promise relief to homeowners in distress." *See* The Federal Trade Commission, *Forensic Loan Audits,* FTC Consumer information (Mar. 2010), https://www.consumer.ftc.gov/articles/0130–forensic–loan–audits. Typically, "[i]n exchange for an upfront fee ... so-called forensic loan auditors ... backed by forensic attorneys offer to review [ ] mortgage loan documents to determine whether [the] lender complied with state and federal mortgage lending laws. The 'auditors' [tell clients they] can use the audit report to avoid foreclosure, accelerate the loan modification process, reduce [the] loan principal, or even cancel [the] loan." *Id.*

James C. Mahan
U.S. District Judge

Plaintiff filed his "answer to motion to dismiss" *pro se*. (Doc. # 17). Plaintiff's response is one paragraph. Plaintiff states that he "acknowledges that the removal of a case from state court to the United States District Court, **does not include** the transfer of a case file and prior filing in the Eighth Judicial District Court. However the facts in complaint now being presented will show that plaintiff's allegations are **with merit** and **valid** with damages over $50,000.00. Defendants [sic] practices are well known as dual tracking, securitization of note, and many more compliance violations in which are validated in complaint. Defendants [sic] history of **intentional misconduct** must stop by reason of **factual allegations** presented in complaint with supporting documents. (Doc. # 17) (emphasis original). Plaintiff then attaches his complaint and various exhibits including the forensic audit performed on the property at issue, the notice of default, various informational letters from BSI Financial Services, Inc. regarding the transfer of the servicing of his loan, and the notice of trustee's sale.

*A.  Securitization*

Securitization does not inherently change the "existing legal relationship between the parties to the extent that the original parties cease to occupy the roles they did at the closing." *Burd v. JP Morgan Chase*, No. 2:13-cv-337-JCM-PAL, 2013 WL 1787192, at *3 (D. Nev. Apr. 25, 2013) (quoting *Reyes v. GMAC Mortgage, LLC.,* 2:11-cv-100-JCM-RJJ, 2011 WL 1322775, at *2 (D. Nev. 2011)). "Securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust." *Reyes*, 2011 WL 1322775, at *2 (collecting cases). Since "securitization merely creates a separate contract, distinct from plaintiffs' debt obligations[ ] under the note and does not change the relationship of the parties in any way, plaintiffs' claims arising out of the securitization fail." *Id. at *3* (citing *Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp.,* No. 2:10-cv-375, 2010 WL 4788209, at *4 (D. Utah Nov. 16, 2010) (quotation marks and citation omitted)).

Plaintiff devotes much of his complaint to the theory that securitization of the loan separated the note from the deed of trust, thereby rendering the loan void. (Doc. # 1 at ¶¶ 18-78). Based on this theory, plaintiff asks the court to cancel the note and deed of trust. (*Id.* at ¶¶ 32, 78). Plaintiff's first through sixth and tenth and eleventh claims depend upon this securitization theory.

(*Id.* at ¶¶ 89-90, 98, 112, 118, 132, 141, 173, 185).  To the extent that plaintiff's claims rely upon securitization of the note changing the legal relationship of the parties, these claims are dismissed because there are no grounds upon which relief may be granted.

      B. *Validity of Assignment*

It is well-established that "a third party lacks standing to raise a violation of a [Pooling and Servicing Agreement ('PSA')]."  *Burd*, 2013 WL 1787192, at *4 (quoting *Benoist v. U.S. Bank N.A.,* 2012 WL 3202180, at *5 (D. Haw. Aug. 3, 2012) (collecting cases)); *see also, e.g., Viloria v. Premium Capital Funding LLC,* 2012 WL 4361252, at *3 (D. Nev. Sept. 20, 2012) ("Plaintiffs lack standing . . . to enforce or assert claims arising under the trust purchase agreement or [PSA] surrounding the 'securitization' of the Note.") (collecting cases).

The court construes plaintiff's *pro se* complaint as alleging that the assignment of the note and deed of trust was invalid for violating various provisions of the PSA.  (Doc. # 1 at ¶¶ 23-32, 47-50, 59-62).  However, even if these allegations are true, plaintiff was neither a party, nor an intended third-party beneficiary, to the assignment of the PSA.  Plaintiff has also failed to assert that he is a party to, or a thirty-party of, the PSA's terms or the assignment of deed of trust.  Therefore, plaintiff does not have standing to allege any violations of the PSA or attack the validity of the assignment.  Plaintiff's implied claims based on alleged PSA violations or the validity of the assignment are dismissed.

      C. *Wrongful Foreclosure*

"Because foreclosures in Nevada are non-judicial, parties initiating foreclosure proceedings are not required to prove standing to foreclose in a court of law before initiating the foreclosure process." *Birkland v. Countrywide Home Loans, Inc.*, No. 2:11-cv-00502-GMN, 2012 WL 83773, at *4 (D. Nev. Jan. 11, 2012).  "[T]he case law within this district holds that the Nevada law governing non[-]judicial foreclosure, NRS § 107.080, does not require a lender to produce the original note or prove its status as a real party in interest, holder in due course, current holder of the note, nominee of the current holder of the note, or any other synonymous status as a prerequisite to non[-]judicial foreclosure proceedings."  *Villa v. Silver State Fin. Servs., Inc.*, No. 2:10-cv-02024-LDG, 2011 WL 1979868, at *6 (D. Nev. May 20, 2011) (quoting *Kwok v. Recontrust*

James C. Mahan
U.S. District Judge

- 7 -

*Company, N.A.,* No. 2:09-cv-2298-RLH-LRL, 2010 WL 4810704, at *4 (D. Nev. Nov. 19, 2010)); *see also Ritter v. Countrywide Home Loans, Inc.,* No. 2: 10-cv-00634-RLH-RJJ, 2010 WL 3829378, at *3 (D. Nev. Sept. 24, 2010) ("[T]he court has consistently held that NRS § 107.080 does not require MERS or any other similar entity to show it is the real party in interest to pursue non[-]judicial foreclosure actions.").

Plaintiff asserts that defendants lacked standing to institute foreclosure proceedings because defendants cannot prove that they have a valid interest to foreclose. (Doc. # 1 at ¶¶ 87, 91, 129, 140). To the extent that plaintiff is alleging a statutory defect in foreclosure pursuant to Ch. 107 of Nevada Revised Statutes, plaintiff fails to sufficiently allege a defect in foreclosure. Nevada statutes do not require parties initiating foreclosure to first provide proof that they are the holder and owner of the mortgage and note. Securitization does not bar a party from initiating foreclosure proceedings. *See* NRS § 107.080; *Chavez v. California Reconveyance Co.,* 2010 WL 2545006, at *2 (D. Nev. 2010) ("NRS 107.080 does not forbid the securitization of a loan.").

Plaintiff's first, fifth, and sixth causes of action depend on the incorrect conclusion that defendants must present evidence of the right to foreclose. Plaintiff's claims for lack of standing/wrongful foreclosure, quiet title, and declaratory relief are dismissed.

   D. *Plaintiff's Individual Claims*

Each of plaintiff's individual claims fail to state a claim upon which relief can be granted.

   1. *Lack of Standing/Wrongful Foreclosure (First Cause of Action)*

As discussed previously, any claim for "lack of standing" fails because defendants need not prove standing to foreclosure under Nevada's non-judicial foreclosure scheme.

   2. *Fraud in the Concealment (Second Cause of Action); Fraud in the Inducement (Third Cause of Action; and Fraud (Eleventh Cause of Action)*

Plaintiff has lumped all defendants together in each claim, denying defendants any meaningful opportunity to refute or defend against the fraud based claims. (Doc. # 1 at ¶¶ 98, 107-08, 112, 182-85). Plaintiff has not offered a single factual allegation concerning the "who, what, when, or where" of the alleged frauds. Even construing plaintiff's complaint liberally, plaintiff

**James C. Mahan**
**U.S. District Judge**

- 8 -

fails to meet the particularity requirement of Rule 9 with respect to all of his fraud claims. Therefore, plaintiff's fraud-based claims fail and are dismissed.

### 3. Slander of Title (Fourth Cause of Action)

The elements of a claim for slander of title are: (1) that the words spoken were false; (2) malice; and (3) special damages. *Rowland v. Lepire,* 662 P.2d 1332, 1335 (Nev. 1983). To prove malice a plaintiff must show that a defendant knew the statement was false or acted with reckless disregard of its truth or falsity. *Id.*

Here, plaintiff does not have title to the property and cannot allege that the foreclosure documents disparage his title. Further, plaintiff does not allege facts plausibly showing that defendants made any false statements, or that their statements were made with malicious intent. (Doc. # 1 at ¶¶ 116-123.) Plaintiff does not dispute that he entered into the deed of trust or that he defaulted on the loan. Instead, plaintiff appears to base his claim entirely on the erroneous conclusion that securitization somehow invalidated the loan and extinguished the lender's right to foreclose.

Further, plaintiff fails to allege any special damages that he suffered as a result of any alleged statement. Plaintiff's slander of title claim is dismissed.

### 4. Quiet Title (Fifth Cause of Action)

An action to quiet title may be brought by "any person against another who claims an estate or interest in real property, adverse to him, for purpose of determining such adverse claim." NRS § 40.010 (2009); *Del Webb Conservation Holding Corp. v. Tolman,* 44 F. Supp. 2d 1105, 1110-11 (D. Nev. 1999). The burden of proof in a quiet title action, rests with the plaintiff to prove good title in himself. *See Breliant v. Preferred Equities Corp.,* 918 P.2d 314, 318 (Nev. 1996). Specifically, when an adverse claim exists, the party seeking to have another party's right to property extinguished must overcome the "presumption in favor of the record titleholder." *Id.* (citing *Biasa v. Leavitt,* 692 P.2d 1301, 1304 (Nev. 1985).

Plaintiff's quiet title claim fails because public record shows that plaintiff no longer holds title to the property, thereby failing to meet the burden of showing good title in himself. Plaintiff admits that Bank of America assigned its interest in the deed of trust to MCM in an assignment

James C. Mahan
U.S. District Judge

- 9 -

recorded on February 8, 2014.  Plaintiff has not otherwise shown that any of the defendants is making any claim to the property at this time.

Further, National Default was authorized to conduct a foreclosure sale as a valid trustee under NRS § 107.080.  A trustee's sale made pursuant to NRS § 107.080 may only be voided in narrow circumstances where the trustee did not substantially comply with the statutory provisions.  NRS § 107.080(5)(a).  The complaint does not include any allegations that National Default did not comply with the statutes authorizing a trustee's power of sale.  Thus, plaintiff does not state a valid quiet title claim.  Plaintiff's quiet title claim is dismissed.

### 5. Declaratory Relief (Sixth Cause of Action)

Plaintiff's declaratory relief claim is not recognized as a cause of action in Nevada.  This is a remedy, not a claim.  Accordingly, this "cause of action" is dismissed.

### 6. TILA Claim (Seventh Cause of Action)

Any claim arising under TILA is limited by a one-year statute of limitations.  15 U.S.C. § 1640(e); *King v. Cal.,* 784 F.2d 910, 915 (9th Cir.1986) (explaining that the limitations period runs from the date of the transaction).  The statute of limitations period begins to run upon execution of the contract because plaintiff possesses all information relevant to the discovery of any non-disclosures at the time the documents of the loan are signed.  *See Meyer v. Ameriquest Mortg. Co.,* 342 F.3d 899, 902 (9th Cir. 2003).  However, equitable tolling may, "in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King,* 784 F.2d at 915.

Plaintiff alleges that defendants violated TILA by failing to provide him with accurate material disclosures.  (Doc. # 1 at ¶ 149).  Plaintiff seeks monetary damages and rescission of the loan.  (*Id.* at ¶¶ 152-153).  Plaintiff's claim fails because he does not show that Bank of America, CTC, MERS, or National Default were involved in the closing or origination of plaintiff's loan.

Further, plaintiff's TILA claim is time-barred.  Plaintiff obtained his loan on September 24, 2004, but did not bring his TILA claim until October 14, 2014, nine years too late.  Although

**James C. Mahan**
**U.S. District Judge**

- 10 -

plaintiff alleges that the statute of limitations was tolled because defendants did not provide the required disclosures, this is not enough to save plaintiff's claim.

Equitable tolling under TILA is not appropriate when the borrower does "not make any showing of due diligence to discover the contents of [the] loan documents." *Silvas v. G.E. Money Bank*, 449 F. App'x 641, 644 (9th Cir. 2011); *see Socop–Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc) (equitable tolling is appropriate "in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim" (internal quotation and alteration marks omitted)). Plaintiff's TILA claim is dismissed.

### 7. RESPA Claim (Eighth Cause of Action)

RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans. 12 U.S.C. § 2605(e)(1)(A), (e)(2). If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $1,000. *Id.* at § 2605(f) (limiting recovery to "actual damages" where there is no pattern or practice of noncompliance with the requirements of § 2605).

Plaintiff alleges that Bank of America failed to respond adequately to a qualified written request in violation of 12 U.S.C. § 2605 (RESPA). (Doc. # 1 at ¶ 161). Plaintiff further alleges that defendants violated RESPA because payments between the defendants at the loan's origination were misleading and wrong. (*Id.* at ¶ 160). Plaintiff does not provide any other factual allegations with respect to this claim, but attaches as an exhibit a qualified written request that plaintiff sent to defendant BSI on May 27, 2014. (Doc. # 1 at ¶¶ 52-56; exh. 9).

Plaintiff fails to state a claim against Bank of America, MERS, CTC, or National Default for failure to respond to a qualified written request. Plaintiff alleges Bank of America failed to respond to a qualified written request, but does not mention MERS, CTC, or National Default. (Doc. # 1 at ¶¶ 161-63). Further, plaintiff does not provide the date of the alleged qualified written request sent to Bank of America, or any other details to support his assertion.

Further, under 12 U.S.C. § 2605(f), an individual borrower may seek damages of "an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance . . . ." 12 U.S.C. § 2605(f)(1).

Here, plaintiff has failed to allege any actual damages or a pattern or practice of RESPA violations by defendants. Alleging a breach of RESPA duties alone without also alleging that the breach resulted in pecuniary loss does not state a claim under RESPA. *Stabley v. Bank of Am., N.A.*, No. 2:11-cv-00635-GMN, 2014 WL 3645327, at *4 (D. Nev. July 22, 2014) (citing *Lal v. Am. Home Servicing, Inc.,* 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("Under RESPA, a borrower may not recover actual damages for nonpecuniary losses.")); *Moon v. Countrywide Home Loans, Inc.,* 3:09-cv-00298-ECR-VPC, 2010 WL 522753, at * 5 (D. Nev. Feb. 9, 2010) ("Plaintiff must have also suffered pecuniary loss to support a RESPA violation."). Plaintiff's claim for RESPA violations is dismissed.

*8. Contractual Rescission (Ninth Cause of Action)*

"Rescission is an equitable remedy which totally abrogates a contract and which seeks to place the parties in the position they occupied prior to executing the contract." *Hernandez v. Saxon Mortg. Servs.*, No. 2:13-cv-323-JCM-NJK, 2013 WL 3335059, at *4 (D. Nev. July 1, 2013) (quoting *Bergstrom v. Estate of DeVoe,* 854 P.2d 860, 861 (Nev. 1993)). Upon rescission, the parties should be "returned as closely as possible to their respective positions prior to entering into the contract." *Id.* A non-breaching party to the contract may either seek to rescind the contract or seek damages from the breach, but not both. *Id.; see also Fuoroli v. Westgate Planet Hollywood Las Vegas, LLC,* No. 2:10-cv-2191-JCM, 2013 WL 431047, at *4 (D. Nev. Feb. 1, 2013).

In this case, plaintiff has not properly alleged that he is a non-breaching party. First, plaintiff has not properly alleged a breach of the contract or that the contract was void or voidable. Second, plaintiff, in fact, breached the contract—the terms of the note and deed of trust—by defaulting on his loans. Plaintiff also fails to allege that he could return the money loaned to him to finance the purchase of the property. Plaintiff's cause of action for rescission is dismissed.

*9. Intentional Infliction of Emotional Distress (Tenth Cause of Action)*

To assert a claim of intentional infliction of emotional distress, a plaintiff must prove that: (1) defendant engaged in extreme and outrageous conduct with the intention of causing emotional distress or acted with reckless disregard for plaintiff's emotional distress; (2) plaintiff suffered severe or extreme emotional distress as a result; and (3) defendant's actions were the proximate cause of plaintiff's emotional distress. *See Jordan v. State,* 110 P.3d 30, 52 (Nev. 2005); *Byrd v. Meridian Foreclosure Serv.,* No. 2:11-cv-00096-KJD-PAL, 2011 WL 1362135, at * 2 (D. Nev. April 8, 2011). Extreme and outrageous conduct falls "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car,* 953 P.2d 24, 26 (Nev. 1998).

Plaintiff fails to allege any "extreme and outrageous" conduct by defendants. (Doc. # 1 at ¶¶ 170-79). Plaintiff alleges that defendants initiated foreclosure proceedings on the property. Other than the securitization argument, which the court has found meritless, plaintiff provides no basis for his conclusion that defendants lacked the authority to foreclose on the property. Plaintiff cannot establish the elements of a claim for intentional infliction of emotional distress. Accordingly, this claim is dismissed.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Bank of America, N.A., CTC Real Estate Services, and Mortgage Electronic Registration Systems, Inc.'s motion to dismiss complaint (doc. # 5), joined by National Default Servicing Corporation (doc. # 19), be, and the same hereby is, GRANTED.

DATED May 5, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**